The Memorandum Decision and Order re Cross-Motions
for Summary Judgment below is hereby signed.  Dated:
May 12, 2008.



_S. Martin Teel Jr._ _____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| WILLIAM EARLY, | ) | Case No. 05-01354 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| KEVIN R. McCARTHY, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 05-10079 |
| FINANCIAL FREEDOM SENIOR | ) | |
| FUNDING CORPORATION, | ) | Not for Publication in |
| | ) | West's Bankruptcy Reporter |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER
RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

The plaintiff McCarthy in this adversary proceeding is the
trustee in the case under chapter 7 of the Bankruptcy Code (11
U.S.C.) of the debtor, William Early.  Pursuant to 11 U.S.C. §§
544, 547, 550, and 551, McCarthy's complaint seeks to avoid the
lien of the defendant, Financial Freedom Senior Funding
Corporation, on the debtor's interest in a parcel of real

property (the "Property") that he and his wife own as tenants by
the entirety.  Although the complaint requests that upon
avoidance of the lien, McCarthy either recover the avoided lien
or its value, McCarthy has filed a motion for summary judgment in
which he seeks both avoidance of the lien, and upon avoidance of
the lien, a monetary judgment against Financial Freedom for one-
half of the balance due under the avoided deed of trust and
related loan agreement.

Although Financial Freedom concedes McCarthy's right to
avoid the lien as to the debtor's interest in the Property, it
has filed a motion for partial summary judgment, contending that
even if McCarthy were entitled to recover the value of the lien
under § 550, McCarthy has failed to submit expert testimony as to
the value of the avoided lien, as required.  Financial Freedom
contends that because McCarthy was required to submit expert
valuation testimony, and because the deadline for disclosing
experts has expired, McCarthy will be unable to demonstrate the
value of the avoided lien at trial.  Accordingly, it argues, the
court should grant partial summary judgment in favor of Financial
Freedom and deny McCarthy's request for a monetary judgment for
the value of the avoided lien.

For reasons stated in more detail below, the court will
grant McCarthy's motion in part to allow him to avoid and
preserve the lien as to the debtor's one-half interest in the

2

property for the benefit of the estate.  The court will deny McCarthy's motion as to his request for entry of a monetary judgment, and deny Financial Freedom's motion for partial summary judgment.

I

FACTS

Other than the value of the lien sought to be avoided, the relevant facts are not in dispute.

As tenants by the entirety, the debtor and his wife Annell Wilson Early own the Property, real estate located at 209 Florida Avenue, N.W., Washington, D.C.  On February 28, 2005, the debtor and his wife executed an Adjustable Rate Home Equity Conversion Deed of Trust ("Deed of Trust") in favor of Financial Freedom on the Property to secure a Home Equity Conversion Loan Agreement ("Loan Agreement") dated February 28, 2005, in the maximum principal amount of $469,342.40 executed by them.[1]  Financial

---

[1]  Although the instrument granting a security interest in favor of Financial Freedom is a deed of trust, both parties have described the instrument as a reverse mortgage or a reverse mortgage deed of trust.  Indeed, the Deed of Trust bears the hallmark features of a reverse mortgage, which Black's Law Dictionary describes as "[a] mortgage in which the lender disburses money over a long period to provide regular income to the (usu. elderly) borrower, and in which the loan is repaid in a lump sum when the borrower dies or when the property is sold." BLACK'S LAW DICTIONARY 1028 (7th Ed. 1999).  Although the Deed of Trust together with the Loan Agreement calls for Financial Freedom to make monthly advances to the debtor and his spouse, Financial Freedom's obligation to make such advances terminated as of the petition date pursuant to paragraph 4.4 of the Loan Agreement.

Freedom initially loaned the debtor and his wife a total of $188,099.78, including a payoff of $138,198.63 to the prior recorded deed of trust, which was released of record on May 17, 2005.  As of May 31, 2006, the balance due on the loan was $203,940.13, consisting of $183,199.78 in the initial advance, $5,075 in credit line advances, $1,274.33 in MIP interest, $13,911.02 in contractual interest, and $480 in service fees.

On September 10, 2005, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Although executed on February 28, 2005, and the disbursement date shown on the HUD-1 for the subject transaction was March 4, 2005, and the prior recorded deed of trust was released of record on May 17, 2005, after being paid off by proceeds from the Deed of Trust loan, the Deed of Trust was not recorded until September 26, 2005, almost seven months after the Deed of Trust was executed and sixteen days after the petition was filed.

II

McCARTHY IS ENTITLED TO AVOID
AND PRESERVE THE LIEN FOR THE BENEFIT OF THE ESTATE

Financial Freedom does not dispute that McCarthy is entitled to avoid Financial Freedom's lien as to the debtor's one-half interest in the property under § 547 or § 544 of the Bankruptcy Code, and that the avoided lien is preserved for the benefit of the estate under 11 U.S.C. § 551.

4

McCarthy can seek to avoid as a transfer the fixing of its lien as to the debtor's one-half interest in the Property either as a preference under section 547 or pursuant to a trustee's § 544 strong-arm powers.  See Walker v. Elm (In re Fowler), 201 B.R. 771, 779 (Bankr. E.D. Tenn. 1996) ("If the holder of a security interest in the debtor's property fails to perfect that interest prior to the filing of the bankruptcy, the trustee can avoid that interest, reducing the holder to the status of an unsecured creditor."); Farmer v. Green Tree Servicing LLC (In re Snelson), 330 B.R. 643, 648 (Bankr. E.D. Tenn. 2005) (creation of lien constitutes transfer within the meaning of the Bankruptcy Code).  When exercising his strong-arm powers under § 544, a trustee enjoys the status of a bona fide purchaser for value and McCarthy is thus insulated from certain defenses that might be available to Financial Freedom were he to proceed under section 547.[2]  The court will thus examine only McCarthy's power to avoid

---

[2]  For example, some courts require that a trustee seeking to avoid and recover a transfer under §§ 547 and 550 first demonstrate that the transfer caused a diminution to the estate. Creditors often raise this defense, and the related common-law earmarking doctrine, when a lien sought to be avoided was acquired through the refinancing of real property and there was a corresponding (if not contemporaneous) release of a pre-existing and valid security interest that would have been enforceable against the trustee had it not been released.  See, e.g., Collins v. Greater Atlantic Mortgage Co. (In re Lazarus), 334 B.R. 542 (Bankr. D. Mass. 2005).  The court expresses no view as to the applicability of the earmarking doctrine were McCarthy's avoidance action being pursued exclusively under § 547, and observes merely that the defense is unavailable to defendants when the trustee's avoidance action arises under § 544.

the lien under § 544.

Under § 544, a trustee in bankruptcy "shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected . . . ." Although a trustee's strong-arm powers arise under federal law, her rights as a "bona fide purchaser" are governed by state law. Sovran Bank/DC National v. United States (In re Aumiller), 168 B.R. 811, 817 (Bankr. D.D.C. 1994). In the District of Columbia, "a deed conveying an interest in real property is not effective against a subsequent bona fide purchaser or creditor without notice unless it is recorded." Id.; D.C. Code § 42-401.[3] The parties agree that, pursuant to D.C. law, Financial Freedom's failure to timely record the Deed of Trust entitles McCarthy to avoid the recording of the deed under § 544.

---

[3]  D.C. Code § 42-401 (2001) provides that "Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as provided in [other sections of the D.C. Code] and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record."

Once a trustee has avoided the fixing of a lien under § 544, the lien is automatically preserved for the benefit of the estate under § 551 and becomes property of the estate under § 541(a)(4). Hendon v. G.E. Capital Mortg. Servs., Inc. (In re Carpenter), 266 B.R. 671 (Bankr. E.D. Tenn. 2001), citing Walker v. Elan (In re Fowler), 201 B.R. 771, 781 (Bankr. E.D. Tenn. 1996).

The debtor listed the Property as exempt on Schedule C of his Schedules pursuant to D.C. Code § 15-501(a)(14).  The debtor's equity in the Property (as opposed to the lien on the Property) became exempt when no one timely objected under F.R. Bankr. P. 4003(b) to the claim of exemption.  11 U.S.C. § 522(l). Under 11 U.S.C. § 522(c)(2), if the lien on the Property is avoided and, as a consequence, automatically preserved for the benefit of the estate under 11 U.S.C. § 551, the Property will remain subject to the lien pursuant to 11 U.S.C. § 522(c)(2), despite the claim of exemption regarding the Property.  See In re Bethea, 275 B.R. 127, 134 (Bankr. D.D.C. 2002).  See also In re Guido, 344 B.R. 193 (Bankr. D. Mass. 2006); Styler v. Local Loan Fin. Servs. (In re Lanctot), 6 B.R. 576 (Bankr. D. Utah 1980). The lien on the debtor's interest in the Property, because preserved for the benefit of the estate, becomes property of the estate pursuant to 11 U.S.C. § 541(a)(4).

McCarthy is thus entitled to summary judgment adjudicating that the lien granted to the defendant on the debtor's one-half

7

interest in the Property is avoided as against the estate.
Furthermore, he is entitled to summary judgment pursuant to 11
U.S.C. § 551 decreeing that the lien is automatically preserved
for the benefit of the estate (unless he were held to be entitled
to a monetary judgment against Financial Freedom in lieu of
asserting his rights under § 551).

III

IF A TRUSTEE ELECTS TO PROCEED UNDER § 551 TO RECOVER AN AVOIDED
LIEN, THAT PRECLUDES RESORT TO THE TRUSTEE'S RIGHT UNDER § 550(a)
TO RECOVER A MONETARY JUDGMENT, AND THE TRUSTEE'S RIGHTS AS THE
NEW HOLDER OF THE AVOIDED LIEN RISE NO HIGHER THAN
THE RIGHTS THAT WERE HELD BY THE PREVIOUS HOLDER OF THE LIEN

Section 550(a) may allow an alternative remedy of recovering
a monetary judgment for an avoided lien if the trustee does not
assert the automatic preservation of the avoided lien under §
551. But the remedies are mutually exclusive: a trustee may not
both recover the lien via automatic preservation under § 551 and
recover a monetary judgment for the value of the lien. Lindquist
v. Household Indust. Fin. Co. (In re Vondall), 352 B.R. 193, 200
(Bankr. D. Minn. 2006), aff'd, 364 B.R. 668 (B.A.P. 8th Cir.
2007). If a trustee proceeds under § 551, or the court holds
that the trustee must proceed under § 551, no other provision of
the Bankruptcy Code gives her the right to obtain a monetary
judgment against the previous holder of the lien.

If a trustee announces that she is willing to forego
proceeding under § 551, and seeks a judgment under § 550(a), the

8

trustee's contentions in attempting to invoke § 550(a) regarding
what difficulties she would face if she only proceeded under §
551 must accurately take account of the rights conferred on her
by reason of § 551.  McCarthy contends that he would have
difficulty proceeding under § 551, for one reason, because he
would likely not be able to sell the entire Property under §
363(b) because he would not likely be able to show under 11
U.S.C. § 363(h)(3) that "the benefit to the estate of a sale of
such property free of the interests of [the debtor's wife]
outweighs the detriment . . . to [the debtor's] wife."  However,
the avoided and preserved lien would not give McCarthy the right
to attempt to sell even the debtor's interest in the Property
under § 363(b).  The lien would not confer title to the Property
on the estate, and thus McCarthy is not entitled to sell title to
the Property under § 363(b).  Were the law otherwise, a debtor
who files a bankruptcy case could see his home sold under §
363(b) by the trustee who avoids an unperfected lien on the home
even though the debtor is current on the mortgage and was looking
to live there indefinitely by continuing to make mortgage
payments.  Congress surely did not intend that result.

By reason of § 551, a trustee steps by way of subrogation
into the shoes of the lienor whose lien is avoided.  See Taubel-
Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 436-37 (1924)
(subrogation is the process by which the preservation of the lien

9

was made available under a similar provision under the Bankruptcy
Act providing for preservation of an avoided lien for the benefit
of the estate).  In the shoes of the former holder of the lien by
reason of § 551, a trustee's rights to enforce the avoided lien
are governed by nonbankruptcy law.  See In re John I. Paulding,
Inc., 76 B.R. 7, 8 (Bankr. D. Mass. 1987).  A trustee's rights
pursuant to the lien to which she is subrogated pursuant to § 551
are no greater than those of the creditor who held the avoided
lien.  See In re Haberman, 347 B.R. 411, 414-15 (B.A.P. 10th
Cir. 2006) ("§ 551 . . . does not expand or otherwise enhance the
status of the avoided lien.").[4]  Accordingly, except as provided
by nonbankruptcy law, the avoided lien here does not give the
trustee a right to sell the debtor's interest in the Property
itself.  Under nonbankruptcy law, the avoided lien does not give
McCarthy an ownership interest in the Property, it only gives him
the enforcement rights available to a lienor.

---

[4]  See also See also Baker v. CIT Group/Consumer Fin. Inc.
(In re Hastings), 353 B.R. 513, 520 (Bankr. E.D. Ky.  2006); In
re Seibold, 351 B.R. 741, 746 (Bankr. D. Idaho 2006); Carvell v.
Bank One, Lafayette, N.A. (In re Carvell), 222 B.R. 178, 180
(B.A.P. 1st Cir. 1998).

IV

THE AVAILABILITY OF AUTOMATIC
PRESERVATION UNDER § 551 OF A LIEN FULLY
INTACT SINCE THE DATE OF ITS TRANSFER
GENERALLY RENDERS RELIEF UNDER § 550 INAPPROPRIATE

As explained in <u>In re Schmiel</u>, 319 B.R. 520, 529 (Bankr.

E.D. Mich. 2005):

> [U]nder § 551, once the transfer to Interstate is
> avoided, it is automatically preserved for the benefit
> of the estate.  That "stick" is returned to the
> "bundle" that makes up estate property.  "Section
> 541(a)(4) [ ] makes explicit that any interest that is
> 'preserved for the benefit of ... the estate under
> section ... 551' is part of the bankruptcy estate."
> <u>Suhar v. Burns (In re Burns)</u>, 322 F.3d 421, 428 (6th
> Cir. 2003) (quoting 11 U.S.C. § 541(a)(4)).

Accordingly, resort to § 550(a) to recover a lien is almost

never, if ever, necessary.[5]  When a lien is preserved under § 551

in an intact state (that is, without having been diminished since

the transfer date), resort instead to § 550 to make a monetary

recovery is generally inappropriate.  See  Gold v. New Century

Mortg. Corp. (In re Salintro), 355 B.R. 15 (Bankr. E.D. Mich.

2006); Lindquist v. Household Indust. Fin. Co. (In re Vondall),

352 B.R. 193, 200 (Bankr. D. Minn. 2006), aff'd, 364 B.R. 668

(B.A.P. 8th Cir. 2007); Kelley v. Chevy Chase Bank (In re Smith),

---

[5]    In In re Greater Southeast Community Hosp. Found., Inc.,
237 B.R. 518 (Bankr. D.D.C. 1999), the debtor had granted a
prepetition lien on accounts receivable that were no longer
property of the debtor when the case commenced.  The accounts
receivable were thus not property of the estate when the case
commenced.  When the lien was avoided under § 544, the new owner
of the accounts receivable argued that the lien was not
automatically preserved for the benefit of the estate because §
551 provides for such preservation "only with respect to property
of the estate."  However, it was evident that even if that were
true, resort to § 550(a) could recover the avoided lien and bring
it back into the estate.  Instead of resorting to § 550 in
Greater Southeast, the court, as in In re Schmiel, could have
viewed the avoidance of the transfer of the lien, and its
automatic preservation for the benefit of the estate, as
implicitly placing the transferred property represented by the
lien back into the estate (except to the extent that the lien had
reached property that was not a transfer of property subject to
avoidance, and that thus would not be hauled into the estate).
The lien itself would explicitly become property of the estate
under the somewhat redundant provision in 11 U.S.C. § 541(a)(4).
The restriction in § 551 of automatic preservation of the avoided
transfer for the benefit of the estate "only with respect to
property of the estate" would still serve a purpose.  For
example, as discussed in the legislative history, an avoided
federal tax lien for nondischargeable claims against an
individual debtor would be preserved for the estate with respect
to property of the estate but not with respect to the debtor's
postpetition salary.  See Greater Southeast, 237 B.R. at 522-23
and 527.

236 B.R. 91, 100 (Bankr. M.D. Ga. 1999); Kelley v. GMAC (In re
Farmer), 209 B.R. 1022, 1024-25 (Bankr. M.D. Ga. 1997).  In In re
Salintro, the court held that once a lien is avoided on a car
that is property of the estate and automatically preserved for
the benefit of the estate under § 551, the trustee may not
recover a monetary judgment against the entity to whom the lien
had been transferred.  The court reasoned that once a lien is
preserved for the benefit of the estate upon avoidance, "there is
nothing for the trustee to recover under § 550(a)."  In re
Salintro, 355 B.R. at 20.  The theory is that if the estate
already owns the collateral itself, the estate makes a full
recovery by virtue of avoidance of the lien.  See In re Farmer,
209 B.R. at 1025.

The holding in In re Salintro ought not apply when the
avoided lien is not preserved intact without having been
diminished via enforcement or other events, then a monetary
recovery under § 550 may be necessary and appropriate.  That a
trustee may invoke § 550 if § 551 alone would not make the
trustee whole is illustrated by Seaver v. Mortgage Elec. Registr.
Sys., Inc. (In re Schwartz), 383 B.R. 119 (B.A.P. 8th Cir. 2008).
There the debtor refinanced a prepetition mortgage postpetition
through a loan from postpetition lenders.  In the postpetition
refinance, the holders of the prepetition mortgage received full
payment of the obligation secured by that mortgage, and released

13

the lien.  The trustee avoided the prepetition mortgage as a
preference under § 547.  Because the postpetition lenders'
mortgages still encumbered the property, the estate would not
have been made whole by the mere avoidance of the prepetition
lenders' mortgage.  Accordingly, it was appropriate to grant the
trustee a monetary recovery under § 550(a) against the entities
that had held the prepetition mortgage.  Id. at 126-27.  "A money
judgment under Section 550(a) was the only remedy available to
restore the bankruptcy estate to the pre-preference position of
the Debtor because the Lenders no longer held the mortgages and
thus could not return them to the bankruptcy estate."  Id. at
128.

Resort to § 550 may also be unnecessary if the proceeds of
collateral can be traced.  A lien follows the proceeds of the
collateral.  Phelps v. United States, 421 U.S. 330, 334-35
(1975), citing Sheppard v. Taylor, 5 Pet. 675, 710, 8 L.Ed. 269
(1831); and Loeber v. Leininger, 175 Ill. 484, 51 N.E. 703

14

(1898).[6]  But if the proceeds of the collateral could no longer

be traced to a specific fund, the lien would be avoidable but

worthless as such (because no collateral could be identified).

However, the value of the lien as it existed at the time of the

transfer could be recovered by the trustee by virtue of the

ability of the court to order under § 550(a) that the trustee

recover the value of the property transferred.  See also

Halverson v. Le Sueur State Bank (In re Willaert), 944 F.2d 463,

464 (8th Cir. 1991) (payment of a bank's preferential mortgage

from sale of real estate prepetition was nothing more than the

proceeds of the preferential transfer, and the trustee was thus

entitled to recover from the bank pursuant to § 550(a) the amount

of the payment it had received); In re Schwartz, 383 B.R. at 125

---

[6]  In Sheppard v. Taylor, seamen held a lien on a ship for
unpaid wages, but the ship had been condemned by Spain as
engaging in illicit trade.  The owners assigned their rights to
assignees (who, as against the seamen, did not enjoy the status
of bona fide purchasers).  Those assignees later made a recovery
from Spain in compensation for the ship pursuant to a treaty
between the United States and Spain.  The seamen sought to
enforce their lien on those proceeds of the ship.  The Court
observed:

> [T]here is no difference between the case of a
> restitution in specie of the ship itself, and a
> restitution in value.  The lien reattaches to the thing
> and to whatever is substituted for it.  This is no
> peculiar principle of the admiralty.  It is found
> incorporated into the doctrines of courts of common law
> and equity.  The owner and the lien holder, whose
> claims have been wrongfully displaced, may follow the
> proceeds wherever they can distinctly trace them.

Sheppard v. Taylor, 5 Pet. at 710.

("Any preferential cash payments received by the Lenders from the
Debtors are proceeds of the mortgages and their recovery is
included in the judgment amounts.")

McCarthy cannot contend that his one-half of the lien has
been diminished in value through acts of Financial Freedom, and
there are not yet any proceeds of the lien.  Financial Freedom
has left the lien undisturbed, and the lien is not yet even ripe
to be enforced.  Nevertheless, this case is distinguishable from
the cases in which the courts ruled that the availability of §
551 makes resort to § 550 unnecessary, as discussed below.

V

THE TRUSTEE HAS SHOWN SPECIAL CIRCUMSTANCES THAT MAY MERIT
THE IMPOSITION OF A MONETARY JUDGMENT AGAINST FINANCIAL FREEDOM

Section 550(a) permits the trustee to recover the
transferred property or, upon court order, the transferred
property's value, yet "[n]either the statute nor the legislative
history gives any guidance as to when the court should order a
transferee or a beneficiary of a transfer to pay over the value
of the property transferred."  Gennrich v. Mont. Sport U.S.A. (In
re Int'l Ski Serv., Inc.), 119 B.R. 654 (Bankr. W.D. Wis. 1990),
quoting The Trustee's Recovery in Preference Actions, 3 Bankr.
Dev. J. 449, 467 (1986).  Although it is within this court's
discretion to award the trustee the value of the lien, it is a
remedy to only "be employed in limited circumstances, and only

16

where the voiding of the lien is inadequate or unavailable as a

remedy."[7] <u>Kelley v. Chevy Chase Bank (In re Smith)</u>, 236 B.R. 91,

100 (Bankr. M.D. Ga. 1999); <u>Cooper v. Ashley Communications, Inc.</u>

<u>(In re Morris Communications NC, Inc.)</u>, 75 B.R. 619 (Bankr.

W.D.N.C. 1987), <u>rev'd on other grounds</u>, <u>In re Morris</u>

<u>Communications NC, Inc.</u>, 914 F.2d 458 (4th Cir. 1990) (finding

under § 550 "a congressional intent to return the property

transferred unless to do so would be inequitable . . . .

[because] [t]his approach avoids unnecessary contests over the

meaning of the term "value," and thereby promotes judicial

economy.").

The trustee cites to several cases in which courts have

addressed the question of when it is appropriate to award a

trustee the value of an avoided transfer under § 550(a) rather

---

[7] The trustee cites to <u>Bank of America (In re Howell)</u>, A.P.
No. 02-10017 (Bankr. D.D.C. January 27, 2003), as an example of
this court's recognition of its right to "award the value of the
lien rather than [limit the trustee's recovery to] recovery of
the lien itself for the benefit of the estate." In that case,
however, the issue was not whether it would be appropriate for
the court to award the trustee the value of the avoided lien, but
rather whether the trustee, as opposed to the bank, was entitled
to post-petition payments from the debtor under the promissory
note. The holding in <u>Howell</u> was limited to a decree that future
payments to the bank would not diminish the trustee's lien. <u>See
also</u>, <u>Morris v. Vulcan Chemical Credit Union (In re Rubia)</u>, 257
B.R. 324 (B.A.P. 10th Cir. 2001) (dissenting opinion discussing
the valuation of an avoided lien and why postpetition payments
reduce the value of the lien by reducing the underlying
obligation and should be deemed proceeds of the loan). Although
<u>Howell</u> remains good law, it is of little relevance to this
dispute.

than limit the trustee's recovery to the transferred property
itself; however, none of the cases cited by the trustee address
the avoidance of a one-half interest in a lien on real property.
In re Int'l Ski Service, Inc., 119 B.R. 654 (Bankr. W.D. Wis.
1990) (within discretion of court to award trustee value of
avoided transfer of machinery and equipment); Morris v. Kansas
Drywall Supply Co., (In re Classic Drywall, Inc.), 127 B.R. 874
(D. Kan. 1991) (within discretion of court to require supplier to
pay trustee value of avoided transfer of merchandise removed from
the debtor's warehouse); First Software Corp. V. Computer
Associates International, Inc. (In re First Software Corp.), 107
B.R. 417 (D. Mass. 1989) (not abuse of discretion for bankruptcy
court to award trustee value of preferential transfer of computer
software that had depreciated in value after the transfer);
Pritchard v. Brown (In re Brown), 118 B.R. 57 (Bankr. N.D. Tex.
1990) (trustee awarded value of transferred oil and gas lease
where the value of such lease was now more speculative than it
had been at time the preferential transfer was made).

Among the relevant factors that a court may consider in
deciding whether to permit a trustee to recover the value of an
avoided transfer rather than the transferred property itself
include: (1) the presence of conflicting evidence with respect to
the value of the transferred property; (2) whether the property
has been converted and is thus no longer recoverable; (3) whether

18

the property has depreciated in value subsequent to the transfer;
and (4) whether the value is readily determinable and awarding
the value would realize a savings for the estate. See In re Int'l
Ski Service, 119 B.R. at 657-58 (citing cases); In re Classic
Drywall, 127 B.R. at 877.

McCarthy has shown special circumstances that may make
resort to a monetary judgment under § 550(a) appropriate. First,
McCarthy does not have the right under § 363(b) to attempt to
sell the Property, and thus would not be able to collect an
amount equal to one-half of the value of the lien via a § 363(b)
sale of the Property. Second, McCarthy would be left under § 551
with only one-half of a lien. Although McCarthy could attempt to
sell his one-half of the lien, any sale of that one-half interest
would present marketing problems because the purchaser would have
to deal with Financial Freedom as the owner of the other half of
the lien. The trustee would thus not be able to realize one half
of the value of the entire lien.

Unless 11 U.S.C. § 363(h) applies, the trustee would be
authorized to sell under § 363(b)(1) only the estate's share of
the lien on the Property. The only co-owner of that lien is
Financial Freedom, not the debtor's wife. It is not clear that §
363(h) would apply to permit a sale of the entire lien as
property, that by reason of the avoidance of the debtor's
transfer of the lien, would be treated as property in which "the

19

debtor had, at the time of the commencement of the case, an
undivided interest." However, Financial Freedom is in a position
to consent to the trustee's selling the entire lien, with the
proceeds to be divided between the estate and Financial Freedom.
If Financial Freedom refuses such consent, and § 363(h) were held
to be inapplicable, that would put the trustee in the position of
attempting to sell only the estate's one-half interest in the
lien.

Financial Freedom has not yet addressed whether it is
willing to permit the trustee to sell the entire lien. If it
expresses such willingness, that might alter the court's
conclusion that a monetary judgment may be appropriate under §
550(a). The costs the trustee would face in selling a reverse
mortgage for which there is a limited market would not be reason
to award him a monetary judgment when he is allowed to dispose of
the entire conveyed interest. See In re Farmer, 209 B.R. at

1025.[8]  The trustee has not shown that this case is similar to a

conveyance of a special type of equipment for which only the

transferee would have a use, and as to which it might be

appropriate to award a judgment for the amount that was paid for

the equipment as a measure of its value to the transferee.  There

is no evidence in the record that only Financial Freedom would

have reason to want to hold the lien.  Moreover, Financial

Freedom has taken no steps to impair the value of the lien.

Unlike a lien on a car where the collateral's value clearly

depreciates, with the lienor receiving periodic payments to guard

against such depreciation, the lien here was on a home and

Financial Freedom did not insist on any periodic payments to

protect it against any decline in the value of the Property.  Any

decline in value of the Property (and thus of the lien) is a

---

[8]  In <u>In re Farmer</u>, a case in which the trustee successfully
avoided a car lien and sought recovery of the value of the lien
under § 550 because it would work a savings for the estate, the
court made the astute observation that although "awarding a
monetary recovery to the Trustee would save the estate the costs
which it would otherwise incur in trying to sell the vehicle. . .
. this fact does not justify such an award.  If it did, the value
of the property would always be awarded, and the section 550
provision allowing the trustee to recover the property
transferred would be rendered meaningless, a result which
Congress could not have intended.  While there are circumstances
in which an award of the value of the property transferred is
appropriate, no such circumstances exist in the instant case.
The vehicle subject to the avoided lien, rather than being in the
hands of a bona fide purchaser, is in the Debtors' possession,
available to be administered by the Trustee as an asset of the
estate."  <u>In re Farmer</u>, 209 B.R. at 1025.

function of market forces.  If Financial Freedom is willing to
permit the trustee to sell the entire lien, it would be
inequitable to hold Financial Freedom liable for such a decline
in value, and to permit McCarthy to resort to a monetary judgment
based on the value at the time of transfer.  Correspondingly, if
the Property has increased in value, Financial Freedom's
willingness to permit the entire lien to be sold would assure
that the estate realized its share of any increase in the value
of the lien (if it did not originally equal the debt).

Absent special circumstances, this case does not present any
need for the trustee to resort to § 550(a) if he is permitted to
sell the entire lien.  The lien has been avoided with the
collateral still in place and with the amount secured by the lien
at the petition date still owed.  The lien as it existed on the
petition date thus remains fully intact.[9]

If Financial Freedom will not consent to a sale by McCarthy
of the entire lien, then a monetary judgment may be appropriate.
When the lien that a lender received extended to both the
debtor's and another party's interest in real property, the
difficulties that a trustee would face in realizing the value of
the lien may warrant resort to a monetary judgment under §

---

[9]  This case does not present the issue of payments made by
the debtor to the lienor on the debt secured by the lien (and by
virtue of there being a lien because the debt itself would be
discharged if unsecured), and made prior to the lien being
avoided.

22

550(a).  Although the court's research did not find any cases

dealing with a lien that extended to property jointly owned by

the debtor and someone else, the point is illustrated by <u>Bohm v.</u>

<u>Dolata (In re Dolata)</u>, 306 B.R. 97 (Bankr. W.D. Pa. 2004).  There

the debtors owned real property adjoining real property owned by

relatives.  In building their own residence (the Personal

Residence), the relatives encroached onto part of the real

property owned by the debtors.  The debtors then transferred that

part of their real property (the Corrective Deed Property) to the

relatives in an avoidable transfer.  Even though the trustee's

avoidance of the transfer of the Corrective Deed Property

nullified the transfer and restored title in the debtors, the

court decided that a monetary judgment under § 550(a) was the

appropriate remedy "because, in order to effect a recovery of the

Corrective Deed Property itself, such property, which now

constitutes but a small portion of the Personal Residence, would

have to be partitioned from such latter property, which

partitioning the Court suspects would be very difficult, if not

impossible."  <u>Id.</u> at 138.

Here, as in <u>Bohm</u>, the trustee in effect is invoking

avoidance only as a vehicle to entitle him to proceed to invoke §

550(a) to obtain a monetary judgment because a sale of only one-

half of the lien would likely not yield one-half of the value of

the entire lien (as one would hesitate to buy only half of a

lien) and because he believes there is little market for selling even the entire lien. Upon recovery of that judgment he would waive the nullification results of the avoidance of the lien, leaving Financial Freedom free to enforce the entire lien on the Property. The court, however, does not believe that the trustee has established that for summary judgment purposes he is entitled to proceed by way of obtaining a monetary judgment in lieu of simply recovering the avoidable lien. That is a discretionary decision upon which different factfinders could reasonably rule differently, and it will depend in part on whether Financial Freedom is willing to let McCarthy sell the entire lien, not just the one-half of the lien that McCarthy has avoided. The court thus holds that summary judgment in favor of the trustee is precluded at this juncture regarding his entitlement to proceed under § 550(a).

VI

THE TRUSTEE HAS NOT SHOWN THE VALUE OF THE LIEN IF HE
IS ENTITLED TO RECOVER A JUDGMENT FOR THE VALUE OF THE LIEN

Even if the court were inclined to award the trustee a monetary judgment for the value of the lien under § 550, the trustee must first demonstrate the value of the lien in question. The trustee contends that the value of the lien is at least equal to the balance due under the Loan Agreement because, according to the trustee, the Property must have a fair market value in excess

24

of the balance due under the Loan Agreement given that it
anticipates future advances and Financial Freedom presumably
believed its loan to be fully secured.   Thus, submits the
trustee, the one-half of the lien that he has avoided has a value
of one-half the balance due under the Loan Agreement.   Financial
Freedom, by contrast, contends that the unique features of a
reverse mortgage in the debtor's one-half interest in the
Property preclude the trustee from establishing the value of the
avoided lien by mere reference to the value of the property
securing the debt or by reference to the balance due under the
Loan Agreement.   Rather, Financial Freedom urges that the trustee
must present expert testimony to establish the value of the
avoided lien, an option that is no longer available to the
trustee given that the deadline for disclosing experts has
expired.

     The trustee urges that the court need only look to the
balance due under the Loan Agreement and the fact that the loan
is fully secured to conclude that the value of the lien is one-
half the balance due under the Loan Agreement.   In support of
this theory, the trustee has submitted an unsworn declaration to
which he has attached the debtor's schedule A listing the
property as having a market value of $158,620, a District of
Columbia Property Detail showing an assessed value of $158,620
for the tax year 2006 and a proposed new assessed value of

$220,860 for the tax year 2007, a copy of Financial Freedom's proof of claim for $199,231.13, and data relating to sales in the debtor's neighborhood since January 1, 2005.  Financial Freedom complains that this evidence is both inadmissible and insufficient.  The debtor's schedules <u>are</u> admissible evidence as to the value of the Property as a homeowner can testify as to the value of his home.  Although the debtor's statement of the value of the Property matches the tax assessed value, there is no evidentiary restriction on how the homeowner is entitled to form his view of the value of the Property.  Moreover, as McCarthy contends, he would be entitled to call the debtor as a witness at trial to establish that the value of the Property has increased.

The Bankruptcy Code does not define "value" for purposes of § 550(a), and it has been observed that "[t]here is no word used in the bankruptcy court which is more elusive than the word value."  <u>Crampton v. Dominion Bank of Bristol (In re H.P. King Co.)</u>, 64 B.R. 487, 489 n.1 (Bankr. E.D.N.C. 1986), quoting <u>In re</u>

Rehbein, 49 B.R. 250, 252 (Bankr. D. Mass. 1985).[10]  Although

there is ample authority for the proposition that "value" as that

term is used in § 550(a) refers to market value, Widemire v.

Siddiki Bros., Inc. (In re King Arthur Clock Co.), 105 B.R. 669

(Bankr. S.D. Ala. 1989) ("The term value connotes market

---

[10]  Section 550(a) is one of several Code provisions giving
rise to litigation over the meaning of the term "value."  For
example, § 550(b)(1) provides that the trustee may not recover
from a "transferee that takes for value . . . in good faith, and
without knowledge of the voidability of the transfer avoided."
Courts, however, are divided on whether value as that term is
used in § 550(b)(1) signifies fair market value, or if the proper
measure is reasonably equivalent value.  Rodgers v. Monaghan (In
re Laguna Beach Motors, Inc.), 159 B.R. 562 (Bankr. C.D. Cal.
1993) (further explaining that the meaning of value under §
550(b)(1) differs from the meaning of value under § 550(a)
because "[t]he two sections use value for different purposes.
Section 550(a) seeks to recover property from a person who has
wrongfully taken funds from an estate, while § 550(b)(1) is meant
to protect an innocent third party transferee from liability on
avoidable transfers.").
      A similar dispute arises under § 363(f)(3), which permits
the trustee to sell estate property if "such interest is a lien
and the price at which such property is to be sold is greater
than the aggregate value of all liens on such property."  Courts
disagree as to whether the term value as it is used in that
section refers to the "face amount of the claim secured by the
lien, i.e. the amount owed to the lienholder . . . . [or whether
value should be] interpreted . . to mean the economic value of
the lien as determined by the fair market value of the property."
Criimi Mae Services Limited Partnerhip v. WDH Howell, LLC (In re
WDH Howell, LLC), 298 B.R. 527, 531 (D.N.J. 2003)(referring to
the different views as the "face value approach" and the
"economic value approach.").
      Assuming the trustee could prove that the value of the
Property exceeds the balance due under the Loan Agreement, the
trustee's proffered valuation would survive scrutiny under either
the economic value or face value approach.  The trustee has not,
however, explained why the court should accept the valuation
methods applicable to a § 363(f)(3) analysis as indicative of the
market value of the avoided lien under § 550.

value."), there is no prescribed valuation formula under § 550(a)
and the value indicator relied upon by a court in any given case
depends upon the circumstances of the case and the nature and
relative weight of the available evidence.  See Am. Furniture
Outlet USA, Inc. V. Woodmark Originals, Inc., 209 B.R. 49, 52
(Bankr. M.D.N.C. 1997)(sales price more reliable indicator of
market value than letter of credit).  For example, determining
the market value of transferred property is simplified if that
property was transferred by way of a sale, because "what a
willing buyer will pay a willing seller is the absolute best
indication of fair market value."  In re First Software Corp., 84
B.R. at 284.  If the property was not transferred pursuant to a
sale, however, other circumstances surrounding the transfer of
the property may provide insight into the fair market value of
the property. Derryberry v. Albers (In re Albers), 67 B.R. 530,
534 (Bankr. N.D. Ohio 1986) (best indicator of value of
transferred trailer was the amount credited to debtor's account
in exchange for trailer).

    The first issue to address is whether the value is to be
based on one-half of the value of the entire lien, or instead the
value of the one-half of the lien held by the trustee.  The value
should be the former.  The debtor and his wife both had to agree
to make the transfer to Financial Freedom because the Property
was held by them as tenants by the entirety.  Accordingly,

28

Financial Freedom would not have been able to obtain a lien by
virtue of only the debtor conveying a lien on the debtor's
interest in the Property.  The debtor's conveyance was thus part
of a conveyance of the entire Property.  Had he and his wife sold
the Property, the value of the conveyance would be attributable
equally to both of them.  Moreover, in Financial Freedom's hands
as transferee, the one-half of the lien avoided here had one-half
of the value of the entire lien.  It is thus appropriate to use
one-half of the value of the entire lien as the measure of the
value of what the debtor transferred to Financial Freedom.

McCarthy has satisfactorily shown the value of the Property
as of the petition date, which is close enough in time to use as
the value of the Property at the time of the prepetition
transfers (consisting of the initial conveyance of the deed of
trust, as well as the lending of additional amounts before the
filing of the petition which became additional amounts secured by
the deed of trust).  McCarthy also points out that he would be
entitled to call the debtor as a witness at trial to establish
the current value of the Property (which McCarthy believes has
increased in value).

The issue, however, is whether the value of the Property may
be used to measure the value of the lien.  Were this a case of a
lien on a car, a depreciating asset, with the lien enforceable in
the event of default in monthly payments, it might make sense to

rule that McCarthy is entitled to recover one-half of the value
of the Property on the petition date, limited by the amount of
the debt secured by the Property.   In Morris v. St. John Nat.
Bank (In re Haberman), 347 B.R. 411, 417 (B.A.P. 10th Cir. 2006),
aff'd, 516 F.3d 1207, 1209 (10th Cir. 2008), the court ruled that
for purpose of awarding a monetary judgment to a trustee with
respect to an avoided lien that had been held by a Bank, the
trustee's "rights in the collateral were to be valued at the
amount of the Bank's debt [sic: should be claim] on the petition
date, limited by the value of the collateral on that date."
McCarthy understandably viewed this case as similar.   There is no
evidence in this case that Financial Freedom looked to anything
other than the Property to assure that its claim would be paid.
From this it may be inferred that Financial Freedom viewed the
Property as fully securing its loan, whenever it might come due.
If the lien had become enforceable shortly after the petition
date, that is, if both the debtor and his wife died, then a sale
of the Property in enforcement of the lien should have fetched
the value ascribed to it by the debtor on his schedules.   The
lien protected Financial Freedom to that extent, and that,
McCarthy would argue, is a fair measure of the value of the lien.

Although the trustee proposes that the value of the lien be
established by reference to the balance due under the loan,
capped by the value of the Property, McCarthy himself asserts

that there is an "obviously limited market for an avoided reverse
mortgage lien on the Debtor's interest in the Property."  When a
trustee asserts a right to recover the value of an avoided lien
due to the general unmarketability of the avoided lien, Financial
Freedom contends that it stands to reason that the holder of the
lien against whom the trustee seeks to recover the lien's value
should be entitled to rely on that same limited market to
establish that the market value of the lien is less than the
lien's face value.  When looking at the market value of the lien,
it may be appropriate to consider, for example, the secondary
market for reverse mortgages as compared with conventional
mortgages, and the effect of changing interest rates on the value
of the debt.

    But when a monetary judgment is granted under § 550(a),
McCarthy can respond, the value is not necessarily what the lien
would have fetched if sold on the open market, but, as in
Haberman, the value of the lien in the hands of the entity whose
lien was avoided, measured by the amount it could realize via
enforcement of the lien.  Nevertheless, that value turns on the
prospect of when the lien would be enforceable, and that
distinguishes this case from Haberman.  The lien's enforceability
depends on the life expectancies of the debtor and his wife, and
measuring the value of the lien today depends on a prediction of
the present value of the lien today based on the amount of debt

that will be owed and what the Property will be worth at the time it becomes enforceable.

Financial Freedom urges that because expert testimony is required to establish the value of the avoided lien, and because the deadline for disclosing experts has expired, the trustee is unable meet his burden of proving the value of the avoided transfer. In response, the trustee, assuming that the only issue pertinent to valuation is the fair market value of the house, suggests several options that would allow him to demonstrate the fair market value of the lien without running afoul of the scheduling order. As discussed at length above, valuation evidence is required not simply to demonstrate the value of the house, but to further establish the market value of the avoided lien. It may be that the value of the house and the face value of the lien are reflective, at least in part, of the fair market value of the avoided lien as to the debtor's one-half interest in the Property, but such evidence is merely a starting point for such an analysis.

The deadline for disclosing experts has expired, and it is thus evident that the trustee will not be able to demonstrate the value of the lien on only the debtor's interest in the Property. Nevertheless, it is understandable that McCarthy might have viewed Financial Freedom as itself viewing its claim as fully secured. Moreover, the case law has not discussed how to value a

reverse mortgage lien under § 550(a), and it was not clear that
the value of the Property and the amount of the debt would not
establish the value of the lien.  Finally, a court's scheduling
order is not carved in stone, and may be modified in the interest
of justice.  The court will reopen discovery for a period of time
to permit McCarthy to obtain the opinion of an expert as to the
value of the lien.

VII

In light of the foregoing, it is

ORDERED that Financial Freedom's motion for partial summary
judgment is denied without prejudice.  It is further

ORDERED that the trustee's motion for summary judgment is
granted in part to allow the trustee to avoid the fixing of one-
half of the lien granted to Financial Freedom on the Property
owned by the debtor and his wife, and pursuant to 11 U.S.C. § 551
that lien is preserved for the benefit of the estate (unless the
trustee recovers a monetary judgment against Financial Freedom
for the value of the one-half of the lien).  It is further

ORDERED that the trustee's motion for summary judgment is
otherwise denied.  It is further

ORDERED that the parties appear before the court on the date
that was set for argument on the motions for summary judgment to
address modifications of the scheduling order.

[Signed and dated above.]

33

Copies: All counsel of record; Office of U.S. Trustee.